## TORBERT *versus* WILSON.

The exemplification of a record. certified by the Clerk of the Court under his private seal, there being no official seal, will be good, and receivable in evidence as though a seal of office were annexed.

In a replication to a plea of the statute of limitation of a former suit, the plaintiff must set out the particulars of such suit, so as to apprize the defendant of what he will have to answer.

It is no answer to the plea of the statute of limitation, that an action had been commenced in another county against the defendant, which action has not been disposed of; and in order to render such fact available against the plea of the statute, it must appear that the former action had been disposed of, before the last was instituted.

Where an action is brought against a defendant in one county, while he is a resident freeholder of another—he must take advantage of such matter of defence, in the action—and if the case proceeds to judgment, he will be foreclosed as to any future defence on that ground.

Error from Mobile Circuit Court.

This was an action of assumpsit to recover the amount of a bill of exchange from Torbert, the plain-

tiff in error.    The action was commenced in Mobile
Circuit Court on the 22d, January, 1828.    Torbert
plead the statute of limitations in two pleas—First
that he had not undertaken, &c. within six years,
and second that the supposed action had not accrued
&c, within six years.    The plaintiff below replied
to the first plea that the defendant did promise in
manner and form &c., and to the second, absence
from the State, &c.    To sustain his replication to
the first plea, Wilson offered in evidence the trans-
cript of a record of the Circuit Court of Marengo
county, showing that a writ had issued from that
Court against the defendant, on the same cause of
action on which the present action was brought, on
the 14th August 1827.    The writ had been returned
*non est inventus*, and was followed by an *alias* and
*pluries*.    The *pluries* was executed on the 14th Oc-
tober 1828 and the suit, as appeared by the trans-
cript, was still pending, when certified by the clerk.
The defendant objected to the admission of the trans-
cript to the jury, on the ground that the same was
certified by the clerk under his private seal, (there
being no seal of office.)    The Court overruled the
objection—and the defendant then proved that he
had been a resident and freeholder of the county of
Mobile from the year 1824 down to the time of the
trial of the cause.    The defendant's counsel reques-
ted the Court to charge the jury, that if they believed
the defendant was a resident freeholder of Mobile
county, at the time the several writs were issued in
Marengo county that then he was not liable to be
sued in that county; and that the issuance of the
writs did not take the case out of the statute.    The
Court refused to give the charge as thus requested

26

and the same being excepted to the following grounds were assigned for error, in this Court—

1. That the transcript of the record, from Marengo county, was not properly proven.

2. That if proven, it was not relevant to the issue.

3. That the residence of the defendant in Mobile was a bar to the applicability of the record.

*Hitchcock,* for Plaintiff—*Acre, contra.*

COLLIER, J.—This is an action of assumpsit upon a bill of exchange, commenced on the 22d January, 1828, in the Circuit Court of Mobile county. The plaintiff in error was defendant below. Among other pleas, the plaintiff pleaded the statute of limitations in two forms—first, that he did not within six years next before the commencement of this action undertake, &c,—second, that the supposed cause of action did not accrue, &c. To the first plea, the defendant replied that the plaintiff did promise in manner and form, as he had declared against him. To the second plea it was replied, that after the cause of action accrued, and within six years next thereafter, and before the commencement of this action, the said James was absent from and beyond the limits of this State, to wit, from the first day of January in the year 1821, until &c.

To support the replication to the first plea of the statute, the defendant offered a paper purporting to be the transcript of a record of the Circuit Court of Marengo county, authenticated by the clerk of that Court under his private seal, he certifying he had no official seal, from which transcript it appears that on

the 14th of August 1827, the defendant caused to be issued from said Court a *Capias ad resp.* for the same cause of action as that for which the present is brought, which was returned *non est*. On the 14th of November 1827 an *alias capias* issued and returned *non est,* and on the 28th of August 1828, a *pluries capias* was issued and returned executed on the 14th of October 1828. It appears from the certificate of the clerk that, that suit was pending on the 26th January 1899, when the transcript was made out. To the admission of this transcript the plaintiff objected, but his objection was overruled and the transcript read to the jury.

The plaintiff also proved that he had been a resident and freeholder of the county of Mobile from the early part of 1824, down to the present time.

The counsel for the plaintiff moved the Court to instruct the jury, if they believed the defendant was a resident and freeholder of the county of Mobile, at the time of issuing the several writs mentioned in the transcript, that then he was not liable to be sued in Marengo, and that the issuing the writ, did not take the case out the statute, which instructions the Court refused to give. This much of the bill of exceptions may serve to make intelligible the view we take of the case.

Two questions are presented for our examination.

1st. Was the transcript from Marengo admissible evidence? This must depend, first, upon the sufficiency of its authentication without an official seal.

2d. Upon the issue under which it was offered, and

3d. Upon its legal effect.

1st In the investigation of this point, we derive no aid from English authority. Their public Courts of record are all provided with seals, so that their decisions furnish no case where an exemplification has been offered in evidence, the verity of which was not attested by an official seal. In this country the state of facts is different, a large number of our Courts have no seals, owing to the neglect of the clerks to procure them or other causes. There is no law, in truth, which makes it obligatory upon them to obtain seals : now, if we were to refuse to receive, as evidence, records certified by the clerks of our Courts, because their authenticity did not appear by an official seal, the burden of proving the subscription of the clerk or the correctness of the copy would be thrown upon the party offering it. This would increase the expense and trouble of litigation, which should certainly not be added to, further than the administration of justice requires. Injury can rarely result from the admissibility of a record, without this additional proof.

The terrors of a criminal prosecution will deter from the introduction of a spurious transcript, and besides, the corrective possessed by the Courts, of awarding new trials, will in general, prevent injury.

But we need not discuss this question as if it was *res integra.* It has been the practice of our Courts since their organization, to receive in evidence transcripts certified as the one before us, and the reasons which would induce a departure must be stronger than any we have been able to discover.

2d. The adaptation of the issue to the proof, is a requisition in pleading of immemorial practice. The chief object to be obtained by pleading, is to advise

the pleader's adversary of the evidence intended to be offered against him.   Now, no intimation is given in the replications to either of the pleas, that the writs, issued in Marengo, will be produced on the trial.

In *Coleson* vs. *Blanton,*[a] it was ruled that the plaintiff must reply special matter, which he insists on in avoidance of the statute.   This case is an authority to prove, that under a general replication, the plaintiff cannot give in evidence a subsequent promise, &c. It will not be necessary, however, for us to express an opinion upon the correctness of that decision as prescribing a rule of universal application.   It perhaps has its exceptions—but the case before us, we apprehend, does not form one.   Whenever the plaintiff proposes to oppose the plea of the statute by proof of a former suit for the same cause, he must give notice by his replication that such proof will be adduced; upon principle, this is clear, and we have been able to find no authority to the contrary.

[a] 3 Hayw. 157.

3d.   The solution of the quesion embraced by this point must depend materially upon the construction of the 10th section of the act "for the limitation of actions and avoiding vexatious law-suits,"[a] passed 1802, which is as follows: " If in any of the said actions, specified in any of the preceding sections of this act, judgment be given for the plaintiff, and the same be reversed by writ of error ;  or if a verdict pass for the plaintiff, and upon matter alleged in arrest of judgment, the judgment be given against the plaintiff, then the said plaintiff, his or her  heirs, executors, or administrators, as the case shall require,' may commence a new action within one year after such judgment reversed or given against the plaintiff and not

[a] Toul. Dig. 460.

after." In order to countervail the plea of the statute by the issuance of the writ in Marengo, it would seem that, that suit should have been disposed of before the institution of this. This provision of the statute proposes a benefit to plaintiffs who have been unsuccessful in the prosecution of one action, and cannot, therefore, by any rule of construction be extended to him, who has brought a second action, without awaiting the issue of the first. I have looked industriously, but to no purpose, for adjudications upon analogous statutes, to authorise its extension thus far.

The cases cited by the defendant's counsel, are cases in which the first suit was disposed of, or in which the writ relied on to avoid the statute, was issued in the same suit in which the plea was pleaded; and, therefore, afford no aid in the decision of the present question. The principle upon which it is insisted, that the suit in Marengo prevents the operation of the statute is, that it serves to shew that the defendants have not slumbered upon their rights. This principle supposes that the bar created by the statute, is founded upon the presumption of payment —but the most recent adjudications shew, that this idea is not well founded, else why require an express promise, or an acknowledgment of a subsisting duty, in order to revive a demand already barred? It supposes further that a party by his own act can furnish proof to countervail the presumption of payment— such a principle is opposed to other rules, and is incompatible with the analogies of the law and cannot be well founded.

In *Hopkins* vs. *McPherson, ad'r*[a] it was determined that a writ taken out, against one of several administra-

a2Bay 194.

tors, will not prevent the statute from running. This is a case directly in point—though the writ was misconceived, and consequently bad, it shews that the plaintiff was not inattentive to his rights.

In *McDowel* vs. *Goodwyn*,[a] it was held that to sustain a replication of an original sued out, the plaintiff must shew it to have been continued up to the time of the trial. In other words, if the process on which the defendant was brought into Court, did not succeed the writ issued, as an *alias, &c.* it was no answer to a plea of the statute.

The case of *Delaplaine* vs. *Crowninshield*,[b] also maintains the doctrine, that it is no answer to a plea of the statute, that a writ was sued out before the bar became complete; unless it was regularly continued by *alias, &c.*

To same point, see *Harris* vs. *Dennis*,[c] *Montgomery* vs. *Caldwell*,[d] *Carwood* vs. *Whetcroft*,[e] *Callis* vs. *Waddy*,[f] *Hume* vs. *Dickinson*,[g] *Jackson* vs. *Horton*.[h]

Both upon reason and authority, then, it would seem that the defendant can draw no aid from his suit in Marengo: and because it was unavailing in proof of any fact in issue, the transcript should have been rejected.

Secondly. Was the suit in Marengo a nullity, because the plaintiff was, at the time of its commencement, a resident and freeholder in Mobile county? The determination of the first question being decisive of the case, we might decline its further examination, but as the second is brought up by the bill of exceptions, and an opinion upon it may influence ulterior proceedings between the parties, we will briefly consider it. By our statute, an action instituted in one county, against a resident and freeholder

[a] 2 Rep. Con Ct. 441.

[b] 3 Mason 329.

[c] 1 Serg. & Rawle 236.
[d] 4 Bibb 305
[e] 1 Har. & J. 103.
[f] 2 ... uf. 511.
[g] 4 Bibb 276.
[h] 7 Caine's Rep. 127.

of another, is abateable upon the plea of the defendant; yet it will not of necessity follow, that the suit is a nullity. It may be avoided at the election of the defendant; but if he fails so to elect, and the cause is prosecuted to judgment, the defendant is foreclosed as to his defence, and all proceedings under the judgment are regular. Were it otherwise, the purchase of property, under an execution issued upon it, would not be safe. Hence it will follow, that the suit in Marengo was not a nullity; and it would be competent for the defendant to prosecute a new action within twelve months after the arrest or reversal of a judgment rendered in *that* suit.

Let the judgment be reversed, and the cause be remanded.

CRENSHAW, J. not sitting.