## MOSBY v. STEELE & METCALFE.

1. During the interval which must elapse between the interlocutory and final decree in bankruptcy, the bankrupt has an inchoate right to the property which he may acquire during such interval. But as the creditors have also the right until the final decree and certificate granted to coerce payment of their demands, and may therefore seize such property by execution, a Court of Chancery will inter-fere and by injunction protect the bankrupt in the enjoyment of such property, until it can be ascertained whether he will obtain his discharge, the creditor be-ing protected by an adequate indemnity.

2. The Chancery Court of the State in which the debtor resides, and not the Fede-ral Court is the proper tribunal to afford relief.

Error to the Chancery Court of Sumter.

THE bill was filed by the plaintiff in error, and charges that
at the July term, 1842, of Sumter County Court, the defendants
recovered a judgment against him for $587 68. That at the
May term, 1843, of the District Court of the United States, he
was declared a bankrupt according to the provisions of the act
of Congress. That after the decree, his friends assisted him
to procure a quantity of groceries, which were designed as sup-
plies for a public house he intended opening, to enable him to
support his family. That the defendants knowing these facts,
and that their debt was embraced in his schedule, caused an
execution to be issued on their judgment and levied on the
groceries, and that the sheriff was proceeding to sell them.
The bill further charges, that if the goods are sold he cannot car-
ry on his business. That he expects to obtain his final discharge

as a bankrupt, and prays that the defendants may be enjoined from proceeding until the final hearing of his petition, and that if he obtains his discharge that the injunction be made perpetual.

The defendants answered, admitting the material allegations of the bill, but insisting that the complainant had an adequate remedy at law.

Subsequently the complainant filed a supplemental bill, setting forth the proceedings in bankruptcy and his final discharge, since the filing of the original bill, which was also answered by the defendants, admitting the facts and insisting that there was an adequate remedy at law.

REAVIS, for plaintiff in error, cited the Law Reporter for May, 1842, 19, Id. August, 1842, 163, and the 4th section of the Bankrupt law, to show that nothing but the final certificate discharged the bankrupt from his debts. To show that the bill was properly filed in the Court of Chancery, and could not have been filed in the District Court, he cited 6 sec. Bankrupt law; 4 Cranch, 179; 2 Story's Eq. 186.

METCALFE, contra, contended that the bill should have been filed in the District Court of the U. States, *Ex parte* Foster, 55 Law Rep. June, 1842, and *Ex parte* Martin, Id. Aug. 1842.

That there was an adequate remedy at law (4 Ala. Rep. 572) for the abuse of the process of the Court. And at all events that an action would lie for the recovery of the property if improperly sold. That a bill in Chancery could not be entertained but under peculiar circumstances to recover specific property. [3 Ala. Rep. 347.]

ORMOND, J.—By a decree in bankruptcy all the property of every description of the bankrupt is transferred to the assignee in bankruptcy, except such articles as by the proviso to the third section, the assignee may permit him to retain. It would seem therefore entirely reasonable that in the interval which must elapse between the decree and the final hearing for the bankrupt's discharge, he should be permitted to hold property subsequently acquired, as otherwise he would not be able to support himself and family. In the matter of B. Grant, in the Circuit Court of Massachusetts, Judge Story, upon this point, says, " I know of no reason why a bankrupt

may not enter into business and hold property, subject of course to the contingency of obtaining a discharge; for if he fails to obtain a discharge, all his property will at last be subject to the claims of his creditors." [Law Rep. May, 1842.]

It is also very clear, that until the final discharge of the bankrupt, he cannot prevent his creditors from seeking to coerce their debts by law, as was held by this court in Givens v. Robbins & Paynter, 5 Ala. Rep. 576, and also by Judge Story, in the matter of Jonathan Cheney, Law Rep May, 1842, because until that is obtained, it cannot be known that the bankrupt ever will be exonerated from the payment of his debts.

As, therefore, it is only the final decree and certificate which discharges the bankrupt from the payment of his debts, the creditor had the right to sue out his execution at the time he did, and the sheriff was consequently bound to levy it, as there is nothing in the bankrupt law protecting property which he may acquire in the interval which must elapse between the interlocutory, and the final decree. Doubtless the bankrupt has an inchoate right to the enjoyment of such property free from the claims of his schedule creditors. How is he to be protected in the enjoyment of this right? It is suggested that he may bring trover or trespass for the property, after he obtains his certificate. It might, perhaps, be well doubted whether a sheriff could be converted into a trespasser by matter subsequent, having the right to levy when he did. But conceding such to be the law, is the bankrupt in the meantime to be deprived of the power of acquiring any thing for the support of himself and family, and to depend on common charity, having already deprived himself of every particle of property which he previously owned for the benefit of his creditors? It must, we think, be evident that the right to sue, after he obtained his certificate would be a very inadequate protection.

In Lockhart v, McElroy, 4 Ala. Rep. 572, we held, that an execution might be superseded if any unjust or improper use was attempted to be made of it; but that decision does not reach this case; because the plaintiff, as has been shown, has the right to do what he is attempting to do, and cannot therefore be restrained by a court of law from acting. The only adequate remedy seems to be the one sought in this case. A Court of Chancery can not only prevent the seizure and sale of the

property, until the bankrupt can ascertain whether he can obtain his certificate of discharge, but it can also protect the creditor from loss or injury, by requiring indemnity from the bankrupt for the temporary suspension, if he should fail to obtain his certificate.

The jurisdiction of the Court in cases like this, is referrible to its head of preventive justice, in which it interferes to prevent great if not irreparable injury.

We think it cannot admit of doubt that the application was properly made to the Court of Chancery of this State. In a case in principle, upon this point, analagous to this, Judge Story held that the jurisdiction of the State Courts over their own Courts was exclusive, unless some authority had by law been conferred on the Courts of the United States, either expressly or by necessary implication, to intermeddle with it. [Law Rep. for May, 1842, 22.] From the view we have taken it appears that the Chancellor erred in dismissing the bill, and as it appears from the supplemental bill and answer that the plaintiff in error has been allowed his certificate of final discharge as a bankrupt, under the act of Congress; the decree of the Chancellor must be reversed, and a decree be here rendered, perpetually enjoining the defendants in error from further proceedings under their execution.

Let each party pay his own costs in this Court and in the Court below.